Bryan L Bleichner (CA BAR #220340)
Philip J. Krzeski (*pro hac vice to be filed*)
Elizabeth A. Orrick *pro hac vice to be filed*)
**CHESTNUT CAMBRONNE PA**
100 Washington Ave S, Ste. 100
Minneapolis, MN 55401
Telephone: (612) 339-7300
bbleichner@chestnutcambronne.com
pkrzeski@chestnutcambronne.com
eorrick@chestnutcambronne.com

Sonjay C. Singh (*pro hac vice to be filed*)
**SIRI & GLIMSTAD LLP**
400 East Pratt Street
8th Floor - #16946751
Baltimore, MD 21202
Tel: (212) 532-1091
E: ssingh@sirillp.com

*Attorneys for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ADAM DEAN** and **CHRISTIAN ERICKSON**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**MOTIVE TECHNOLOGIES, INC.**,<br><br>Defendant. | Case No. 3:26-cv-7675<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT - 1

Plaintiffs Adam Dean and Christian Rickson, individually and on behalf of all others similarly situated (the "Class" or "Class Members"), brings this Class Action Complaint against Defendant Motive Technologies, Inc. ("Defendant" or "Motive"). The allegations set forth in this Complaint are based on the personal knowledge of the Plaintiffs and upon information and belief and further investigation of Counsel.

## I.    NATURE OF THE ACTION

1.    Motive is a technology company that provides AI-powered fleet management, driver monitoring, and logistics software primarily for trucking, transportation, construction, and field-service companies.[1] A critical product and software service Motive provides its customers is the installation of dual-facing and road-facing AI-powered dash camera systems in commercial vehicles (hereafter "AI Dashcam").[2]

2.    Motive's AI Dashcam continuously monitors and records the roadway, surrounding traffic conditions, and vehicle operations in real time through high-definition cameras that capture video footage, driving activity, vehicle movements, and roadway events.[3] Motive's cameras record and upload searchable footage and telematics data to a centralized cloud-based platform accessible by fleet operators.[4]

3.    A key service provided by Motive is the collection of data from its customers' drivers to alert the customer of unsafe driving events, such as driver fatigue,

---

[1] *Integrated fleet management software*, MOTIVE, https://gomotive.com/get/fleet-management/ (last accessed May 8, 2026).

[2] *The AI Dashcam Plus*, MOTIVE, https://gomotive.com/products/dashcam/ (last accessed May 8, 2026).

[3] *The AI Dashcam Plus*, MOTIVE, https://gomotive.com/products/dashcam/ (last accessed May 8, 2026).

[4] *AI Dashcam Overview*, MOTIVE, https://helpcenter.gomotive.com/hc/en-us/articles/31078620052253-AI-Dashcam-Overview (last accessed May 8, 2026); *Do Dashcams have cloud storage?*, MOTIVE, https://helpcenter.gomotive.com/hc/en-us/articles/18023993653277-Do-Dashcams-have-cloud-storage (last accessed May 8, 2026); *AI Omnicam*, MOTIVE, https://gomotive.com/products/ai-omnicam/ (last accessed May 8, 2026).

drowsiness, drivers taking eyes off the road, cell phone use, eating, or seat belt violations.[5] Motive collects this information with the AI Dashcam directed at the driver. Motive's artificial intelligence software detects unsafe driving events with data collected from the camera and will alert the customer or driver in real time.[6]

4. In addition to these features, Motive's AI Dashcam and centralized cloud-based platform operate an automatic license plate recognition system, commonly referred to as Automatic License Plate Readers ("ALPRs"). ALPRs are advanced camera systems that can automatically detect and record an individual's "Vehicle Tracking Data," and then aggregate and use that information to track an individual's movements. The term "Vehicle Tracking Data" as used herein means license plate numbers, vehicle characteristics (including any and all data used by Motive to identify a given vehicle), time-stamped records, and geographic location data reflecting a vehicle's location and movements through areas, along with any other information monitored, captured, collected, and/or aggregated by Motive's ALPRs and ALPR systems.

5. Motive's ALPRs identify and create a detailed record of every vehicle that enters its view. Unlike a person at an intersection, these cameras never blink, they never sleep, and they see and remember everything. Every passing car is captured, and its license plate and other features are analyzed using proprietary machine learning programs.

6. The California Legislature was moved by the prevalence and scope of this violation of privacy and passed the California ALPR Law, Cal. Civ. Code § 1798.90.5, et seq. (the "ALPR Law"), which regulates the use of ALPRs by public and private entities.

---

[5] *AI Accuracy*, MOTIVE, https://gomotive.com/products/features/ai-accuracy/ (last visited May 4, 2026) (listing safety events detected by Motive's software and cameras).

[6] *AI Dashcam*, MOTIVE, https://gomotive.com/products/ai-dashcam/ (last visited May 4, 2026) ("AI instantly detects high-risk behavior with accuracy and sends in-cab alerts to modify behavior in real time.").

Among other things, the California Legislature recognized that, at a minimum, the public has a right to know that their Vehicle Tracking Data is being recorded and aggregated, and how that data will be used. Therefore, the ALPR Law requires that every "operator" ("a person that operates an ALPR system") and "end-user" ("a person that accesses or uses") an ALPR system, like Motive, make publicly available, and post conspicuously on its website, very specific ALPR policy and usage information that meets the minimum requirements of the law.

7. Motive is a manufacturer and operator of ALPR systems, allowing its customers to purchase, install, and utilize ALPRs in their dash cameras. Motive actively markets and deploys its dashcams, which include this ALPR technology, for installation ranging from individual vehicles to nationwide commercial vehicle fleets consisting of thousands of vehicles. However, Motive failed to properly and timely inform Plaintiffs and Class Members that their Vehicle Tracking Data was being captured, time-stamped, and recorded, and additionally failed to notify Plaintiffs and Class Members that the resulting data being aggregated enabled the long-term tracking of Plaintiffs and Class Members' individual movements.

8. Motive's use of ALPRs is not just an invasion of privacy, but also a violation of the ALPR Law, in that Motive failed to publicly post the required policy and usage information as required by the statute.

9. As a result of Motive's misconduct, Plaintiffs and Class Members have suffered numerous injuries, including: (i) invasion of privacy; (ii) emotional distress and heightened concerns related to the surreptitious surveillance of their movements by unknown third parties; and (iii) statutory damages.

10. Therefore, Plaintiffs seek, on behalf of themselves and a Class of similarly situated persons, to remedy these harms and assert the following statutory and common law claims against Motive: violations of the California ALPR Law, Cal. Civ. Code §

1798.90.5, et seq.; Invasion of Privacy under California's Constitution, Cal. Const. Art. 1, § 1; and Common Law Invasion of Privacy.

## II.    PARTIES

### A.  PLAINTIFF

*Plaintiff Christian Erickson*

11.    Plaintiff Christian Erickson (hereinafter, "Plaintiff Erickson") is a citizen of the State of California residing in Riverside County and brings this action both in an individual capacity, and on behalf of all others similarly situated.

12.    Plaintiff Erickson worked as a FedEx Ground Contractor with Ground Logistics Services in the State of California in our around 2022 to 2025. During this time, a Motive ALPR was installed in his company vehicle, and recorded him at all times.

13.    Plaintiff Erickson was given no disclosure relating to the extensive information collected by the Motive ALPR, including that the Motive ALPR collects biometric and license plate information.

14.    Additionally, every time Plaintiff Erickson arrived to work, his personal vehicle was recorded and analyzed, and the ALPR transmitted that data, including pictures of his vehicle, other automatically-generated information relating to his vehicle, the identities of his associates, his license plate number, and his time-stamped location, to Motive, where it was then aggregated and catalogued in Motive's voluminous vehicle tracking records.

15.    Motive failed to properly and timely inform Plaintiff Erickson through the public posting on its website of a usage and privacy policy as required under California's ALPR Law, that when he drove near any of Motive's customers' vehicles, Motive recorded and tracked Plaintiff Erickson's location, movements, and Vehicle Tracking

Data, and transmitted that information to Motive for the unauthorized and illegal purposes set forth herein.

16. Plaintiff Erickson was not aware that he was being tracked, and never authorized Motive to disclose any information pertaining to his person, including ALPR-collected information subject to the California ALPR Law, to Motive or any other unauthorized third-party.

17. The installation and operation of the ALPRs in California have given him a great deal of anxiety. Plaintiff Erickson worries about his privacy and personal security, and he worries about how governmental and private individuals with access to Motive's records might use or misuse the records of his movements. Further, Plaintiff Erickson worries that malicious third-party hackers might one day gain access to Motive's records and misuse such data.

18. Plaintiff Erickson has no control over how Motive, or anyone else who has authorized or unauthorized access to the Motive's records, uses the record of his movements, biometrics or other data. Plaintiff Erickson has no say in when, or even if, Motive's records of Plaintiff Erickson's personal information and movements will be deleted. Additionally, if someone misuses Plaintiff Erickson's information, or if Motive experiences a data breach exposing Plaintiff Erickson's information, Plaintiff Erickson may never know unless the affected user or Motive decides to tell him.

19. On information and belief, Motive used ALPRs to record, transmit, and share Plaintiff's personal movement and other data with any individual or entity who has access to the Motive's records, all without Plaintiff's knowledge.

***Plaintiff Adam Dean***

20. Plaintiff Adam Dean (hereinafter, "Plaintiff Dean") is a citizen of the State of Ohio residing in Franklin County and brings this action both in an individual capacity, and on behalf of all others similarly situated.

21. Plaintiff Erickson worked as a truck driver for Accurate Transportation in our around 2020 to 2023. During this time, a Motive ALPR was installed in his company vehicle, and recorded him at all times.

22. Plaintiff Dean was given no disclosure relating to the extensive information collected by the Motive ALPR, including that the Motive ALPR collects biometric and license plate information.

23. Additionally, every time Plaintiff Dean arrived to work, his personal vehicle was recorded and analyzed, and the ALPR transmitted that data, including pictures of his vehicle, other automatically-generated information relating to his vehicle, the identities of his associates, his license plate number, and his time-stamped location, to Motive, where it was then aggregated and catalogued in Motive's voluminous vehicle tracking records.

24. Plaintiff Dean was not aware that he was being tracked, and never authorized Motive to disclose any information pertaining to his person to Motive or any other unauthorized third-party.

25. Plaintiff Dean worries about his privacy and personal security, and he worries about how governmental and private individuals with access to Motive's records might use or misuse the records of his movements. Further, Plaintiff Dean worries that malicious third-party hackers might one day gain access to Motive's records and misuse such data.

26. Plaintiff Dean has no control over how Motive, or anyone else who has authorized or unauthorized access to the Motive's records, uses the record of his movements, biometrics or other data. Plaintiff Dean has no say in when, or even if, Motive's records of Plaintiff Dean's personal information and movements will be deleted. Additionally, if someone misuses Plaintiff Dean's information, or if Motive experiences a data breach exposing Plaintiff Dean's information, Plaintiff Dean may never know unless the affected user or Motive decides to tell him.

27. On information and belief, Motive used ALPRs to record, transmit, and share Plaintiffs' personal movement and other data with any individual or entity who has access to the Motive's records, all without Plaintiffs' knowledge.

## B. DEFENDANT

*Defendant Motive Technologies, Inc.*

28. Defendant Motive Technologies, Inc. is a Delaware corporation with its principal place of business located at 1355 Market Street, Floor 11, San Francisco, CA 94103. Motive may be served at its registered agent, Incorporating Services, LTD., 7801 Folsom Blvd, #202, Sacramento, CA 95826.

## III.    JURISDICTION AND VENUE

29. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) and the Class Action Fairness Act because this is a class action involving minimal diversity where Motive is a Delaware corporation and is diverse from at least one class member, there are more than 100 class members, and there is over $5,000,000 in controversy.

30. This Court has personal jurisdiction because Motive is registered to conduct business in California, transacts business in the Northern District of California, owns or uses real property in the Northern District of California, and the events giving rise to this action occurred in the Northern District of California.

31. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) because Motive resides in the Northern District of California and a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of California.

## IV.    STATEMENT OF FACTS

## A.  MOTIVE'S MASS SURVEILLANCE APPARATUS

**i.   Motive Collects and Distributes Detailed, Sensitive Information from Customers, Drivers, and the Public at-Large.**

32.    Motive markets the "Motive Platform" to commercial fleet operators which it describes as "a fully unified AI-powered Integrated Operations Platform, combining Driver Safety, Fleet Management, Equipment Monitoring, Spend Management, Workforce Management, and AI Vision all in one place."[7]

33.    Underpinning the Platform is the data collected through Motive's AI Dashcams which record continuous video of both the vehicle driver and the road, as well as providing persistent GPS tracking.[8] This information is transmitted in real time to the Motive Platform, where it is analyzed by Defendant's suite of AI-powered analytics tools.[9]

34.    Motive's mass surveillance operates on a massive scale. Motive advertises its cameras are in use across "nearly 100,000 customers and 1.3 million drivers."[10] Accordingly, upon information and belief, there are 1.3 million drivers currently operating with ALPR technology constantly recording and surreptitiously tracking Americans across the United States.

35.    As explained further below, much of the information processed by Motive's AI Dashcams constitutes highly sensitive personal information of both the vehicle operator and the general public, including biometric, vehicle, and geolocation data.

36.    Moreover, this information is not accessible only by Motive, but is also transmitted to and analyzed by numerous other companies, many of which use the data collected by Motive for their own commercial purposes, including targeted advertising.

### ii.    Motive's Collection of ALPR Data.

37.    Motive markets its AI dashcams and fleet-management platform, which include its ALPR system, to a broad range of physical operations industries that operate

---

[7] *Motive Platform Overview*, MOTIVE, https://helpcenter.gomotive.com/hc/en-us/articles/310796721116637-The-Motive-Platform-Overview (last visited July 7, 2026).
[8] *AI Dashcam*, MOTIVE, https://gomotive.com/products/ai-dashcam/ (last visited July 7, 2026).
[9] *Id*.
[10] *Motive Raises $150m,* MOTIVE, https://gomotive.com/blog/motive-150m-raise-for-ai-global-expansion/ (last accessed May 11, 2026).

commercial vehicles, mobile workforces, and large equipment fleets across a wide range of industries including transportation and logistics, trucking, and construction.[11]

38. Motive's ALPRs are computer-controlled cameras that automatically capture, identify, and record all vehicles that come into their view.[12] Motive's ALPRs are connected directly to the automobile's power source and able to connect to Motive's cloud-based computer network through cellular data.[13]

39. When a license plate enters Motive's ALPR's field of view, the ALPR automatically captures a photograph of the license plate and transfers it to Motive's cloud-based network, where character recognition software automatically converts the image into a license plate number.[14]

40. Motive claims that its ALPRs can accurately capture vehicles with its "high-resolution 1440p zoom lens with a narrow field of view," enabling "Automated License Plate Recognition (ALPR) to clearly capture license plates up to 40 feet away, or in rain or snow."[15] Consequently, through a combination of precise imaging and powerful, multivariable vehicle identification software, Motive's ALPRs are able to identify almost every vehicle that they see.

41. After being installed, the Motive's ALPRs automatically detect, identify, and create a record of every vehicle that enters their field of view.[16] These records include not only a picture of the vehicle but also a wide range of automatically generated identification information, defined herein as Vehicle Tracking Data, including the

---

[11] *See supra* fn. 6, 7, (*see also Bringing AI to the Edge,* FAST COMPANY, https://www.fastcompany.com/91507325/bringing-ai-to-the-edge-how-motives-new-ai-dashcam-plus-can-make-roads-safer (last accessed May 11, 2026).

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Introducing AI Dashcam Plus,* MOTIVE, https://gomotive.com/blog/introducing-ai-dashcam-plus/ (last accessed May 11, 2026).

[16] *Id.*

vehicle's license plate number, make, model, body, state of registration, the date and time it was recorded, the location of the ALPR, and a list of other records of the same vehicle.

42. Once recorded by the ALPRs, these vehicle records, including the Vehicle Tracking Data, are then added to Motive's cloud-based network, which combines records from Motive's other ALPRs' continuous recordings. Ultimately, this system of compiling license plate and vehicle information data allows Motive to create a continuous record of a vehicle's movement through areas where Motive's ALPRs are present.

43. Accordingly, by using ALPRs, Motive chose to make a record of *each and every* driver that traveled within the vicinity of the ALPRs for use in a mass surveillance enterprise.

44. Motive's ALPRs are dashcams mounted inside (on the dashboard or mounted on the windshield of) an automobile, and designed to be relatively small and not visually prominent. Thus, absent a publicly posted notice regarding an operator's or end-user's ALPR usage and privacy policy, individuals tracked by Motive's ALPRs have no way of knowing the function of the devices, nor the extent to which their movements are being tracked.

45. Motive does not provide a public directory of its ALPR locations or customers who use its ALPR technology to aid individuals who may want to avoid its mass surveillance.

46. Accordingly, it is extremely difficult, if not impossible, to entirely avoid having one's Vehicle Tracking Data captured by Motive's ALPRs, even when just driving on public roads and never interacting with a customer of Motive. Motive's vast network of ALPRs monitor the public roads and private properties of any customer driving on them. This means that even if you do not interact with a specific customer of Motive, private citizens are unable to avoid having their movements tracked and loaded into Motive's ALPR network. This means that it is not even theoretically possible for someone to "opt out" of tracking.

47.    Thus, as a result of Motive's ALPRs, more and more Americans will find themselves unable to escape perpetual surveillance by private, for-profit companies and those companies' customers.

### iii.    Motive's Collection of Biometric Data.

48.    Motive markets the AI Dashcam and its underlying artificial intelligence software as offering the ability to instantly alert a driver to unsafe behaviors and coach them on the behavior in real-time.[17]

49.    To accomplish this, Motive uses behavioral recognition technology to capture, store, and use Plaintiffs' and other similarly situated individuals' biometric identifiers, such as the individual's face geometry.

50.    For example, Motive markets that its software can identify when a driver is no longer looking at the road, using the individual's face geometry, to create an alert for the driver to keep their eyes on the road rather than a cell phone. [18]



*Figure 1: Motive's AI Detection*

---

[17] *Id.* ("AI instantly detects high-risk behavior with accuracy and sends in-cab alerts to modify behavior in real time.").

[18] *Id.* (photo next to "Advanced AI detection models," stating: "Our AI detection models recognize unsafe driving actions instantly. Audio and visual dash cam alerts enhance driver awareness in real time.").

51.    Additionally, Motive has marketed that its behavioral recognition technology has improved to the point where it can detect driver drowsiness and Motive has developed a "drowsiness-fatigue index."[19]



52.    Motive describes its "drowsiness-fatigue index" as using artificial intelligence to continuously monitor a driver's biometric identifiers and biometric information to detect fatigue:

> Driver fatigue is one of the most complex and high-stakes problems in driver safety. Unlike discrete safety events, driver fatigue develops gradually and is often difficult to detect, as it manifests through subtle cues over time. By the time it becomes readily apparent, the risks to drivers and vehicles can already become substantial. **Our Driver Fatigue Index combines micro-behaviors, like yawning, eye rubbing, stretching, and head droop**, with patterns in driving dynamics such as late braking, swerving, inconsistent speed, and abnormal acceleration. These signals are noisy, brief, and often missed by traditional models. Detecting them at scale requires rich multimodal data, finely tuned models, and **robust temporal fusion across driver-facing and road-facing cameras**, telematics, **and historical behavior, deep domain expertise in understanding how fatigue manifests differently across drivers**, vehicles, and operating conditions, **and continuous feedback loop from low-latency validation from annotators that confirms ambiguous signals in real time**. Our strength lies in the ability to aggregate fragmented signals into a coherent fatigue risk profile, enabling earlier and more accurate detection before risks escalate.[20]

---

[19]    SEC    Form    S-1,    at    7    (Dec.    23,    2025), https://www.sec.gov/Archives/edgar/data/1646681/000162828025058773/motive-sx1.htm#i55023a5380214b8183c713f6ac927c62_1197.

[20] *Id.* (emphasis added).

53.    Motive knows who the driver of a vehicle is because it uses facial recognition technology to automatically match drivers to vehicles as soon as they begin driving, a feature it calls "Face Match."[21] The AI Dashcam will capture driver images at the start of the trip and match it to an existing facial profile or create a new one.

54.    Based on information and belief, the AI Dashcam collects biometric identifiers and biometric information from drivers and automatically sends the data via internet connection to Motive's servers and/or cloud-based storage. On information and belief, Motive's cloud storage is hosted through Amazon Web Services ("AWS").[22]

### iv.    Motive's Disclosure of Sensitive Information to Third Parties.

55.    Motive admits that sensitive information collected by the AI Dashcam, including biometric and ALPR data, can be shared with third parties through its Public API.[23]

56.    The Motive Platform integrates with over 250 different third-party software services, many of which use the data collected by the AI Dashcams for their own commercial purposes.[24]

57.    Despite providing highly sensitive individual information to hundreds of third-party software developers, Motive does nothing to protect the privacy of the people tracked by its AI Dashcams. On the contrary, the only restriction that Motive places on

---

[21] *Face Match*, MOTIVE, https://helpcenter.gomotive.com/hc/en-us/articles/30844545688861-Face-Match (last updated April 2026).

[22] *Infrastructure Security, Trust Center*, Motive, https://trust.gomotive.com/?itemUid=3be11e0d-b4c0-4008-8216-c498ad417829&source=search (last visited May 5, 2026).

[23] *Dashcam Image Capture,* MOTIVE, https://helpcenter.gomotive.com/hc/en-us/articles/36541567575709-Dashcam-Image-capture-via-API/ (last visited July 7, 2026).

[24] *Partnership Overview*, MOTIVE, https://helpcenter.gomotive.com/hc/en-us/articles/31079400480285-Partnerships-Overview (last visited July 7, 2026).

the use of the data it provides is that the developer abides by the developer's own privacy policy.[25]

58.    Motive does not mandate any specific privacy protections that the developer's privacy policy must include, and indeed, many provide no protection at all.

59.    For example, one of Motive's most popular integrations is TruckIT, a fleet management program that receives live location data from the Motive Platform.[26]

60.    Unbeknownst to individuals tracked by the Motive Platform, TruckIT does not only process the AI Dashcam data it receives to serve Motive's customers but also provides it to "data analytics providers," "marketing providers" and even with "third parties to market their products or services," including through "targeted advertising."[27]

61.    Third-party integrations are managed by the fleet administrator. As a result, neither the drivers of AI Dashcam-equipped vehicles, nor certainly the members of the public who merely share the road with those vehicles, have any way of knowing which third-parties are receiving their sensitive biometric and ALPR data.

62.    Motive thus not only violates Plaintiffs' and Class Members' privacy through the surreptitious collection of biometric and ALPR data for its own use but further transmits that data to hundreds of unknown third parties to be analyzed, monetized, and sold to advertisers.

**B.    MOTIVE'S COLLECTION OF ALPR DATA VIOLATES THE CALIFORNIA ALPR LAW**

    **i.    The California ALPR Law Prohibits Unauthorized Collection of ALPR Data.**

---

[25] *Terms of Service*, MOTIVE, https://gomotive.com/legal/api-terms-of-service/ (last visited July 7, 2026).

[26] *TruckIt Integration*, MOTIVE, https://helpcenter.gomotive.com/hc/en-us/articles/24232731736093-TruckIT-integration-with-Motive-Marketplace (last visited July 7, 2026).

[27] *Privacy Policy*, TRUCKIT, https://www.truckit.com/terms-and-policy/privacy-policy (last visited July 7, 2026).

63.    In 2015, California enacted the ALPR Law, Cal. Civ. Code §§ 1798.90.5 et seq., to address the increasing use of ALPR systems and the privacy risks associated with the aggregation and storage of Vehicle Tracking Data. The Legislature enacted the statute against the backdrop of rapidly expanding surveillance technology capable of collecting and aggregating large volumes of location-based information about individuals.

64.    The legislative history of the ALPR Law reflects a particular concern with the ability of ALPR technology to compile historical Vehicle Tracking Data, aggregate that information, and to do so without public notice or consent.

65.    The Senate Committee on Transportation and Housing, when reviewing the ALPR Law proposal, explained that while license plates themselves are publicly visible, ALPR technology enables far more extensive monitoring because of its ability to systematically collect and aggregate Vehicle Tracking Data. The Committee noted that ALPR systems can capture thousands of license plates per minute and compare those plates against databases of vehicles associated with crimes or other alerts. [28]

66.    The California Assembly Committee on Privacy and Consumer Protection explained that ALPR systems "have the ability to record vehicles' attendance at locations or events that, although lawful and public, may be considered private." The Committee further noted the potential sensitivity of such information, observing that "mobile LPR units could read and collect the license plate numbers of vehicles parked at addiction counseling meetings, doctors' offices, health clinics, or even staging areas for political protests." [29]

67.    Against this backdrop, the Senate Committee on Transportation and Housing emphasized the risks created when ALPR systems compile and store location data over

---

[28] California Senate Committee on Transportation and Housing (April 7, 2015) https://www.leginfo.ca.gov/pub/15-16/bill/sen/sb_0001-0050/sb_34_cfa_20150402_153639_sen_comm.html (last accessed March 5, 2026).

[29] *Id.*

CLASS ACTION COMPLAINT - 16

time. The Legislature expressed concern that ALPR technology allows the creation of large databases of Vehicle Tracking Data, enabling the reconstruction of an individual's movements and activities through the aggregation of time-stamped location records. As the Committee explained:

> Unlike other types of personal information that are covered by existing law, civilians are not always aware when their ALPR data is being collected. One does not even need to be driving to be subject to ALPR technology: A car parked on the side of the road can be scanned by an ALPR system.[30]

68. Given the immense risk of abuse at the expense of individuals' rights to privacy, the Senate committee noted the privacy concerns associated with ALPR technology, explaining:

> The collection of a license plate number, location, and time stamp over multiple time points can identify not only a person's exact whereabouts but also their pattern of movement.[31]

69. To address these privacy concerns, the California Legislature imposed specific requirements on entities operating or using ALPR systems. As the Legislature stated, the purpose of the ALPR Law is to ensure "minimal privacy protections by requiring the establishment of privacy and usage protection policies for ALPR operators and end-users. This bill does not prevent the authorized sharing of data, but if data is shared, it must be justified and recorded."[32]

70. The ALPR Law defines an "ALPR system" as "a searchable computerized database resulting from the operation of one or more mobile or fixed cameras combined with computer algorithms to read and convert images of registration plates and the characters they contain into computer-readable data." Cal. Civ. Code § 1798.90.5(a).

---

[30] California Senate Committee on Transportation and Housing (April 7, 2015) https://www.leginfo.ca.gov/pub/15-16/bill/sen/sb_0001-0050/sb_34_cfa_20150402_153639_sen_comm.html (last accessed March 5, 2026).
[31] *Id.*
[32] *Id.*

71.    The ALPR Law requires ALPR operators, defined as "a person that operates an ALPR system," and ALPR end-users, defined as "a person that accesses or uses an ALPR system," to draft, adopt, and adhere to written policies governing the collection, use, and sharing of ALPR information. *See* Cal. Civ. Code §§ 1798.90.5(a), 1798.90.5(c), 1798.90.51(b), 1798.90.52, 1798.90.53(b).

72.    Importantly, the ALPR Law demands ALPR operators and end-users must "implement a usage and privacy policy to ensure that the collection, use, maintenance, sharing, and dissemination of ALPR information is consistent with respect for individuals' privacy and civil liberties." Cal. Civ. Code §§ 1798.90.51(b), 1798.90.53(b). To not violate an individual's right to know, the statute commands that ALPR operators' and end-users' privacy policies include the following:

(A) The authorized purposes for accessing and using ALPR information;

(B) A description of the job title or other designation of the employees and independent contractors who are authorized to access and use ALPR information, including identifying the training requirements necessary for those authorized employees and independent contractors;

(C) A description of how the ALPR system will be monitored to ensure the security of the information accessed or used, and compliance with all applicable privacy laws and a process for periodic system audits;

(D) The purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information to other persons;

(E) The title of the official custodian, or owner, of the ALPR information responsible for implementing this section;

(F) A description of the reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors; and

(G) The length of time ALPR information will be retained, and the process the ALPR end-user will utilize to determine if and when to destroy retained ALPR information.[33]

73.    ALPR operators must also comply with two additional requirements under Cal. Civ. Code § 1798.90.52:

---

[33] CA. Civ. Code §§ 1798.90.51; 1798.90.53.

CLASS ACTION COMPLAINT - 18

The Audit Requirement: ALPR operators must maintain a record of each time the ALPR system is accessed, including the date and time, data queried, identity of the querying party, and purpose of the query. § 1798.90.52(a).

The Proper Use Requirement: ALPR operators must require that ALPR information only be used for the authorized purposes described in the usage and privacy policy. § 1798.90.52(b).

74. Operators and end-users of ALPR technology are required not only to create and adhere to these privacy policies, but also to make these policies publicly available on their websites, conspicuously specifying the authorized purposes for which ALPR information may be accessed or used. *Id.*

75. Thus, requiring ALPR operators and end-users to establish and publicly post policies governing use and maintenance of this data is a primary focus of the ALPR Law. Through these provisions, the Legislature sought to mitigate the privacy risks created by ALPR systems by ensuring transparency, limiting unauthorized access and use, and regulating the collection and aggregation of Vehicle Tracking Data.

76. These requirements ensure both that ALPR operators and end-users consider and make deliberate decisions on these issues, and that individuals can know when and how their ALPR Vehicle Tracking Data is being collected and used.

77. Most importantly, the ALPR Law "grants individuals *the right to know* which entities are collecting their ALPR data and how it is being used and maintained. Collecting and maintaining individuals' ALPR information without implementing and making public the statutorily required policy harms these individuals by violating this right to know."[34]

### ii. Motive's Collection of ALPR Data Violates the California ALPR Law.

78. Upon information and belief, Motive installed ALPRs across hundreds or thousands of its customers' dashcams. As a result, Plaintiffs and Class Members were

---

[34] *Bartholomew v. Parking Concepts, Inc.*, 118 Cal. App. 5th 438, 449 (2026).

tracked by the ALPRs, which transmitted their Vehicle Tracking Data, including pictures of their vehicles, their likeness, other automatically generated information relating to their vehicles, the identities of their associates, and their location to Motive, where it was then catalogued in Motive's voluminous vehicle tracking records across its cloud-based network.

79.    Motive failed to publicly provide the statutorily required notice to Plaintiffs and Class Members, via its website, Motive's ALPRs were recording movements throughout its customers' dashcams, and accordingly, Motive would record their Vehicle Tracking Data, including location, images, and individualized vehicle information, and transmit that data to Motive for consolidation with any other Vehicle Tracking Data records pertaining to Plaintiffs and Class Members gathered from Motive's other ALPRs installed across the United States.

80.    Motive's unauthorized and illegal recording of Plaintiffs' and Class Members' Vehicle Tracking Data, without public notice, includes not only a snapshot of their vehicles, but also a wide range of automatically generated identification information, including the vehicle's license plate number, make, model, body, state of registration, the date and time it was recorded, and a list of other records of the same vehicle.

81.    Plaintiffs' and Class Members' movements and information were illegally recorded by Motive, combined with other information gathered across other ALPRs, and then stored in Motive's network where each record pertaining to a given individual or vehicle could be related to all others, thus creating a continuous record of Plaintiffs' and Class Members' movement through areas where ALPRs are present.

82.    As such, Plaintiffs and Class Members were unaware that their Vehicle Tracking Data, including their location, movements, and vehicle information, were being tracked, recorded, and shared by Motive with unauthorized parties.

83.    Plaintiffs and Class Members never authorized Motive to collect or disclose any information about them, including ALPR-collected information subject to the California ALPR Law.

84.    The ALPR Law, codified at Cal. Civ. Code §§ 1798.90.51(a) and 1798.90.53(a), required Motive, as both an operator and end-user to, among other things, "[m]aintain reasonable security procedures and practices, including operational, administrative, technical, and physical safeguards, to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure." *Id.*

85.    These reasonable security procedures and practices required Motive to implement an ALPR usage and privacy policy, "in order to ensure that the access, use, sharing, and dissemination of ALPR information is consistent with respect for individuals' privacy and civil liberties." Cal. Civ. Code §§ 1798.90.51(b); 1798.90.53(b).

86.    Moreover, as specifically set forth, *supra*, the ALPR Law's ALPR usage requirements command that ALPR operators and end-users, such as Motive, "at minimum," must implement and publicly post a privacy policy with regards to its ALPR use that informs the public with regard to Motive's purposes for accessing and using ALPR information, list the job title and training for individuals who will have access to the ALPR information, inform individuals how long their ALPR information will be retained, and also describe how the ALPR system will be monitored for compliance with all applicable privacy laws, among other things. *See* Cal. Civ. Code §§ 1798.90.51(b)(2)(A)-(G); 1798.90.53(b)(2)(A)-(G).

87.    In establishing these specific requirements governing operators and end-users with regard to their ALPR use, the Legislature expressly provided that such requirements enumerated in Cal. Civ. Code §§ 1798.90.51(b)(2)(A)-(G) and 1798.90.53(b)(2)(A)-(G) constitute the "***minimum***" safeguards necessary to protect individuals' privacy and civil liberties. Accordingly, any failure to comply with or meet

these minimum statutory requirements is a violation of the ALPR Law. Cal. Civ. Code §§ 1798.90.51(b)(2)(A)-(G); 1798.90.53(b)(2)(A)-(G).

88.    At all times relevant, Motive has failed to meet the requirements of the ALPR Law by failing to maintain reasonable security procedures and practices, including operational, administrative, technical, and physical safeguards, to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure.

89.    Furthermore, Motive failed to implement, post, or adhere to the ALPR Law's usage requirements, in that Motive never implemented or posted an ALPR privacy policy compliant with California law.

90.    Accordingly, Motive failed to ensure that the access, use, sharing, and dissemination of Plaintiffs' and Class Members' ALPR information was consistent with respect for individuals' privacy and civil liberties. Cal. Civ. Code § 1798.90.53(b).

## C.  PLAINTIFFS' AND CLASS MEMBERS REASONABLE EXPECTATION OF PRIVACY

91.    At all times, Plaintiffs and Class Members had a reasonable expectation Motive would not track and record their biometric and geolocation data for use in a massive surveillance apparatus like the one created by the Motive Platform.

92.    Privacy polls consistently show that Americans overwhelmingly consider their location information to be among the most sensitive facets of their life.

93.    For example, one poll found that 78-percent of Americans believe that Congress should "strengthen privacy protections for people in the U.S. against warrantless government surveillance of their…location information" (as opposed to 9-percent against).[35] Likewise, in another survey, 88-percent of Americans stated that "not

---

[35] *YouGov Mass Surveillance Debate Polling*, DEMAND PROGRESS EDUCATION FUND (Dec. 14, 2023), https://demandprogresseducationfund.org/new-polling-as-mass-surveillance-debate-reaches-final-stages-in-congress-americans-demonstrate-overwhelming-support-for-increased-privacy-protections/ (last accessed Aug. 20, 2025).

CLASS ACTION COMPLAINT - 22

having someone watch you or listen to you without your permission" was important to them, with 72-percent rating it as "very important."[36]

94.     Personal privacy and informed consent are material to Plaintiffs and Class Members, as also demonstrated by the California Legislature's requirement in the ALPR Law that any end-user of an ALPR camera or system provide public notice of the same.

## V.     TOLLING AND ESTOPPEL

95.     Any applicable statutes of limitation have been tolled by Motive's knowing and active concealment of its use of the AI Dashcams, and the scope of information that they collected about Plaintiffs and Class Members.

96.     As described above, Motive's AI Dashcams, are inconspicuous. A reasonable person without prior knowledge of Motive's products would not understand the function or scope of information collected by an AI Dashcams. At most, the AI Dashcams look like standard dashboard cameras; nothing about the ALPR's inconspicuous appearance announces that they are capturing license plate information and combining it with data collected by thousands of other similar units being used to track vehicle and individual location data.

97.     Motive was and is under a statutory duty to disclose the nature, significance, and consequences of its use of the AI Dashcams. Despite this obligation, Motive failed to make publicly available proper notice of Motive's use of AI Dashcams, and additionally, failed to post on its website proper notice, in compliance with the California ALPR Law, of Motive's usage and privacy practices with regard to the AI Dashcams used by its customers that would have informed Plaintiffs and Class Members that they were being tracked by Motive's surveillance network. By failing to adhere to the duty of disclosure

---

[36] Mary Madden and Lee Rainie, Americans' Attitudes About Privacy, Security and Surveillance, PEW RESEARCH CENTER (May 20, 2015), https://www.pewresearch.org/internet/2015/05/20/americans-attitudes-about-privacy-security-and-surveillance/ (last accessed Aug. 20, 2025).

required by the ALPR Law, Motive concealed its surveillance and Plaintiffs and Class Members had no way to know that Motive was aggregating information about them with information from tens of thousands of other cameras.

98. Therefore, through no fault or lack of diligence, Plaintiffs and Class Members were deceived and could not reasonably discover Motive's unlawful conduct. As such, Plaintiffs could not have known the information essential to pursue his claims.

99. For these reasons, all applicable statutes of limitation have been tolled pursuant to the discovery rule.

100. The earliest that Plaintiffs or Class Members, acting with due diligence, could have reasonably discovered Motive's misconduct would have been shortly before the filing of this Complaint.

## VI.   CLASS ACTION ALLEGATIONS

### A.  CLASS DEFINITION

101. Plaintiffs brings this action on behalf of themselves and the following described Nationwide Class (the "Class") in accordance with the Federal Rules of Civil Procedure 23:

**The Nationwide Class**

All residents of the United States who, as a result of Motive's use of ALPRs, were recorded without authorization by Motive's ALPRs.

102. Plaintiffs also bring claims on behalf of the following subclasses:

**The California ALPR Subclass**

All citizens of the State of California who, as a result of Motive's use of ALPRs, had their Vehicle Tracking Data accessed and/or acquired by Motive's ALPRs located in California.

**The Nationwide Driver Subclass**

All residents of the United States who, as a result of Motive's use of ALPRs, were recorded without authorization by a Motive ALPR that was installed in their vehicle as a condition of their employment.

103.   Excluded from the Class are Motive and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

104.   Plaintiffs reserve the right to amend the definition of the Class or add subclasses if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

## B.   THIS ACTION MEETS THE REQUIREMENTS TO BE CERTIFIED AS A CLASS

105.   Plaintiff, as alleged above, is a member of the proposed Class.

106.   The proposed Class can be identified through Motive's business records and databases used to collect data from its AI Dashcams.

107.   Numerosity: Fed. R. Civ. P. 23(a)(1). The Class is so numerous that the individual joinder of all members is impracticable. Upon information and belief, there are at least 1,000 individuals that have been impacted by Motive's violations. Moreover, the exact number of those impacted is generally ascertainable from information that is in the exclusive control of Motive.

108.   Commonality: There are questions of law and fact common to Plaintiffs and to the proposed Class, including, but not limited to, the following:

   a. Whether and to what extent Motive had a duty to maintain the confidentiality of Plaintiffs' and Class Members' Vehicle Tracking Data, including their location, license plate, and vehicle information;

   b. Whether Motive had duties not to disclose Plaintiffs' and Class Members' Vehicle Tracking Data, including their location, license plate, and vehicle information, to unauthorized third parties;

c. Whether Motive adequately, promptly, and accurately informed Plaintiffs and Class Members that their Vehicle Tracking Data, including their location, license plate, and vehicle information, would be disclosed to third parties;

d. Whether Motive violated the law by failing to promptly notify Plaintiffs and Class Members that their Vehicle Tracking Data, including their location, license plate, and vehicle information, was being disclosed without their consent;

e. Whether Motive engaged in unfair, unlawful, or deceptive practices by failing to keep the Plaintiffs' and Class Members' Vehicle Tracking Data, including their location, license plate, and vehicle information, free from unauthorized disclosure;

f. Whether Motive violated the California ALPR Law as asserted in this Complaint;

g. Whether Plaintiffs and Class Members are entitled to actual, statutory, punitive, consequential, and/or nominal damages as a result of Motives' wrongful conduct;

h. Whether Motives knowingly made false representations as to Motive's data security and/or privacy practices; and

i. Whether Motive knowingly omitted material representations with respect to Motive's data security and/or privacy practices.

109. Typicality: Fed. R. Civ. P. 23(a)(3). The claims of the named Class Representative and the Class Members have a common origin and share a common basis. Their claims originate from the same unlawful data collection from Motive's AI Dashcam. The proposed class states claims for which relief can be granted that are typical of the claims of class members.

110. <u>Adequacy</u>: Fed. R. Civ. P. 23(a)(4). The named class representatives are adequate representatives of the proposed class and subclass members because their interests coincide with, and are not antagonistic to, the interests of the members of each proposed class and subclass they seek to represent. Plaintiffs have retained counsel competent and experienced in privacy and class action litigation. Plaintiffs intend to prosecute this action vigorously. Plaintiffs and their Counsel will fairly and adequately protect the interests of members of the proposed class.

111. <u>Superiority</u>: Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claim is prohibitively high and would, therefore, have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Motive. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

112. <u>Injunctive and Declaratory Relief Appropriate</u>: Motive has acted on grounds generally applicable to the Class Members, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis.

## VII.  <u>CAUSES OF ACTION</u>

### COUNT I
### COMMON LAW INVASION OF PRIVACY
### <u>(On Behalf of Plaintiffs and the Nationwide Class)</u>

113. Plaintiffs re-allege all preceding paragraphs of this Complaint and incorporates them here by reference.

114. Plaintiffs and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their confidential information, including their Vehicle Tracking Data; (2) making personal travel decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to travel and associate lawfully with others without being subjected to surveillance absent Plaintiffs' and Class Members' knowledge or consent; and (3) being informed of data collecting about them, including biometric data.

115. Motive's disclosure of Plaintiffs' and Class Member's Vehicle Tracking Data, without the knowledge and informed consent of Plaintiffs and Class Members is an intentional intrusion on Plaintiffs' and Class Members' solitude or seclusion.

116. Plaintiffs and Class Members had a reasonable expectation of privacy in their personal and private affairs and movements, which includes the expectation that their Vehicle Tracking Data would be protected from surreptitious disclosure to third parties and the aggregation of data which would allow third parties to track their movements.

117. Motive's repeated acquisition, disclosure, and aggregation of Plaintiffs' and Class Members' Vehicle Tracking Data, and Motives' inclusion in a large surveillance database that permits near constant tracking of a person's movements, is highly offensive to the reasonable person.

118. As a result of Motives' actions, Plaintiffs and Class Members have suffered harm and injury including, but not limited to, an invasion of their privacy rights.

119. As a direct and proximate result of Motives' invasion of their privacy, Plaintiffs and Class Members have been damaged and have suffered actual and concrete injuries, including the diminution of value of their private information, the loss of valuable privacy rights and protections, heightened stress, fear, anxiety, risk of future invasions of privacy and the mental and emotional distress and harm to human dignity interests.

120. Plaintiffs and Class Members are entitled to appropriate relief, including damages to compensate them for such harms, and hereby seek appropriate relief including, but not limited to, damages that will reasonably compensate Plaintiffs and Class Members for the aforementioned harms to their privacy interests, as well as nominal damages and/or disgorgement of profits made by Motive as a result of Motive's intrusions upon Plaintiffs' and Class Members' privacy.

121. Plaintiffs and Class Members are also entitled to punitive damages resulting from the malicious, willful and intentional nature of Motives' actions, directed at injuring Plaintiffs and Class Members in conscious disregard of their rights. Such damages are needed to deter Motives from engaging in such conduct in the future.

122. Plaintiffs also seeks such other relief as the Court may deem just and proper.

**COUNT II**
**INVASION OF PRIVACY UNDER CALIFORNIA'S CONSTITUTION**
**Cal. Const. Art. 1, § 1**
**(On Behalf Plaintiff Erickson and the California ALPR Subclass)**

123. Plaintiffs re-allege all preceding paragraphs of this Complaint and incorporate them here by reference.

124. For Article I, section 1 of the California Constitution provides that "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and ***privacy***."

125. The right to privacy in California's constitution creates a private right of action against private and government entities.

126. To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy, and (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms.

127. Motive violated Plaintiff Erickson's and California ALPR Subclass Members' constitutional right to privacy by recording, collecting, storing, aggregating, and disseminating Plaintiff Erickson's and California ALPR Subclass Members' Vehicle Tracking Data.

128. Motive's unlawful conduct knowingly facilitated the recording, tracking, monitoring, and aggregation of Plaintiff Erickson's and California ALPR Subclass Members' vehicle's movements through areas monitored, captured, collected, and/or aggregated by ALPRs and related systems.

129. Motive's use and installation of ALPRs facilitated the aggregation and long-term tracking of Plaintiff Erickson's and California ALPR Subclass Members' individual movements, as Motive's use of a pervasive network of tens of thousands of ALPRs and aggregation of data across Motive's network created comprehensive movement profiles of Plaintiff Erickson and California ALPR Subclass Members.

130. Plaintiff Erickson and California ALPR Subclass Members have a legally protected privacy interest in their Vehicle Tracking Data when that information is aggregated and used to track their movements, for which they had a reasonable expectation of privacy, which Motive violated when Motive surreptitiously recorded, aggregated, analyzed, and tracked Plaintiff and the Class Members.

131. Accordingly, Motive's actions were performed in a manner that was highly offensive to Plaintiff Erickson and California ALPR Subclass Members and were an egregious violation of social norms.

132. Motive has intruded upon Plaintiff Erickson's and California ALPR Subclass Members' legally protected privacy interests, including interests in precluding the aggregation, analyzation, tracking, and dissemination or misuse of their personal movements and private affairs, through Motive's monitoring, capturing, collecting, and aggregating Plaintiff Erickson's and California ALPR Subclass Members' Vehicle Tracking Data.

133. Plaintiff Erickson and California ALPR Subclass Members had a reasonable expectation of privacy in their Vehicle Tracking Data. Plaintiff Erickson and California ALPR Subclass Members did not consent to or otherwise authorize Motive to capture, collect, monitor, aggregate, or disclose their Vehicle Tracking Data.

134. Motive invaded Plaintiff Erickson's and California ALPR Subclass Members' privacy by capturing, collecting, monitoring, aggregating, and disclosing, without prior statutorily required notice and without authorization, Plaintiff Erickson's and California ALPR Subclass Members' Vehicle Tracking Data. Specifically, Motive's use and installation of ALPRs allowed for the long-term tracking of Plaintiff Erickson's and California ALPR Subclass Members' individual movements through Motives' integration with Motive's cloud-based network, which is made up of data tracked and aggregated by tens of thousands of other ALPRs owned by Motive to create comprehensive movement profiles of individuals, including Plaintiff Erickson and California ALPR Subclass Members.

135. Plaintiff Erickson and California ALPR Subclass Members did not reasonably expect Motive would commit such acts in violation of their privacy.

136. As a direct and proximate result of Motive's invasion of their privacy, Plaintiff Erickson and California ALPR Subclass Members have been damaged and have suffered actual and concrete injuries, including the diminution of value of their private information, the loss of valuable privacy rights and protections, heightened stress, fear, anxiety, risk of future invasions of privacy and the mental and emotional distress and harm to human dignity interests.

137. Plaintiff Erickson and California ALPR Subclass Members are entitled to appropriate relief, including damages to compensate them for such harms, and hereby seek appropriate relief including, but not limited to, damages that will reasonably compensate Plaintiff Erickson and California ALPR Subclass Members for the aforementioned harms to their privacy interests, as well as nominal damages and/or

disgorgement of profits made by Motive as a result of Motive's intrusions upon Plaintiff Erickson's and California ALPR Subclass Members' privacy.

138. Plaintiff Erickson and California ALPR Subclass Members are also entitled to punitive damages resulting from the malicious, willful and intentional nature of Motives' actions, directed at injuring Plaintiff Erickson and California ALPR Subclass Members in conscious disregard of their rights. Such damages are needed to deter Motive from engaging in such conduct in the future.

**COUNT III**
**VIOLATIONS OF CALIFORNIA'S ALPR LAW**
**Cal. Civ. Code § 1798.90.5, et seq.**
**(On Behalf Plaintiff Erickson and the California ALPR Subclass)**

139. Plaintiff re-alleges all preceding paragraphs of this Complaint and incorporate them here by reference.

140. The California ALPR Law, Cal. Civ. Code § 1798.90.5, *et seq.*, regulates the private use of ALPR devices by "ALPR operator[s]," defined as "a person that operates an ALPR system," and "ALPR end-user[s]," defined as "a person that accesses or uses an ALPR system."[37]

141. Because Motive owns, operates, and controls the dash camera system which contains the ALPR system in which Motive has deployed, and likewise, installed, accessed, and used ALPRs on its across its customers' vehicles, and similarly, the resulting data is then transmitted to Motive's cloud-based network, Motive was required to abide by California's ALPR Law as both ALPR operators and end-users.

142. Under the ALPR Law, ALPR operators and end-user must:

Implement a usage and privacy policy in order to ensure that the access, use, sharing, and dissemination of ALPR information is consistent with respect for individuals' privacy and civil liberties. The usage and privacy policy shall be available to the public in writing, and, if the ALPR end-user has an Internet

---

[37] Cal. Civ. Code § 1798.90.5(a), (c).

CLASS ACTION COMPLAINT - 32

Web site, the usage and privacy policy shall be posted conspicuously on that Internet Web site.38

143.   Motive violated the ALPR Law. First, Motive did not properly implement a usage and privacy policy regarding its use of ALPR information or make it publicly available, including on its website, let alone a policy that satisfied the requirements of the ALPR Law.39

144.   This failure of Motive to properly draft and public provide a privacy policy relating to the ALPR data, post the privacy policy on its website, and adhere to the privacy policy for the benefit of Plaintiff Erickson and California ALPR Subclass Members, is inconsistent with Plaintiff Erickson's and California ALPR Subclass Members' individual privacy and civil liberties in that it deprived them of their statutory right to know.

145.   The ALPR Law has been in effect for over ten years and was passed long before Motive implemented its use of ALPRs.  As such, Motive either knew or should have known about the Law's privacy policy requirements, yet Motive failed to implement and publicly post the required policy which adhered to the enumerated conditions for ALPR operators and end-users. Therefore, Motive acted either willfully or recklessly in disregard of the ALPR Law.

146.   As a result of Motive's violation of the ALPR law, and pursuant to Cal. Civ. Code § 1798.90.54, Plaintiff and each Class Member are entitled to (i) the greater of their actual damages or statutory liquidated damages of $2,500; (ii) punitive damages; (iii) reasonable attorneys' fees and other litigation costs; and (iv) other preliminary and equitable relief as the Court determines to be appropriate.40

---

38 Cal. Civ. Code §§ 1798.90.51(b)(1); 1798.90.53(b)(1).
39 Cal. Civ. Code § 1798.90.51(b)(2); 1798.90.53(b)(2) (listing required information to be included in ALPR usage and privacy policy).
40 Cal. Civ. Code § 1798.90.54(b).

**COUNT IV**
**VIOLATIONS OF THE CALIFORNIA INVASION OF PRIVACY ACT**
**Cal. Pen. Code § 637.7**
**(On Behalf Plaintiff Erickson and the California ALPR Subclass)**

147. Plaintiffs re-allege all preceding paragraphs of this Complaint and incorporate them here by reference.

148. California Penal Code Section 637.7 prohibits any person from using an electronic tracking device to determine the location or movements of any person.

149. Motive is a "person" within the scope of the California Invasion of Privacy Act ("CIPA").

150. The Motive Platform which collates vehicle-specific geolocation data through the AI Dashcam's ALPR tracking is an "electronic tracking device" as defined by CIPA as it is a device that reveals the location and movement of vehicles whenever they transit in the vicinity of an AI Dashcam.

151. Defendants violated Cal. Penal Code § 637.7 by tracking Plaintiff Erickson and California ALPR Subclass Members through use of the Motive Platform without their knowledge or consent.

152. The collection of geolocation data from Plaintiff and members of the proposed California subclass without full and informed consent violated and continues to violate Cal. Penal Code § 637.7.

153. As a direct and proximate result of Defendant's violations, Plaintiff Erickson and California ALPR Subclass members were injured and suffered damages, a loss of privacy, and loss of the value of their personal information in an amount to be determined at trial.

154. Pursuant to Cal. Pen. Code Section 637.2, Plaintiff and California Subclass members have been injured by Defendant's violations of the CIPA and seek damages for

the greater of $5,000 or three times the amount of actual damages, and injunctive relief, plus reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and as representatives of all other persons similarly situated, prays for judgment against Motive, awarding relief as follows:

a.  Certifying the proposed Class under Fed. R. Civ. P. 23 and appointing Plaintiffs and their Counsel to represent the Class;

b.  Declaring that Motive's actions, as set forth above, violate protections established under federal and/or state constitutional, statutory, and/or common law;

c.  Awarding equitable relief enjoining Motive from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' protected data;

d.  Awarding injunctive relief, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff sand Class Members;

e.  Awarding all damages available at equity or law, including, but not limited to, actual, consequential, punitive, statutory and nominal damages, as allowed by law in an amount to be determined;

f.  Awarding reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses, as allowed by law;

g.  Awarding pre- and post- judgment interest, to the extent allowable by law; and

h.  Awarding any and all such other and further relief this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand that this matter be tried before a jury on all issues so triable.

DATED: July 24, 2026

Respectfully submitted,

*/s/ Bryan L. Bleichner*
Bryan L Bleichner (CA BAR #220340)
Philip J. Krzeski*
Elizabeth A. Orrick*
**CHESTNUT CAMBRONNE PA**
100 Washington Ave S, Ste. 100
Minneapolis, MN 55401
Telephone: (612) 339-7300
bbleichner@chestnutcambronne.com
pkrzeski@chestnutcambronne.com
eorrick@chestnutcambronne.com

Sonjay C. Singh*
**SIRI & GLIMSTAD LLP**
400 East Pratt Street
8th Floor - #16946751
Baltimore, MD 21202
Tel: (212) 532-1091
E: ssingh@sirillp.com

Tyler J. Bean*
**SIRI & GLIMSTAD LLP**
101 Park Avenue
Suite 1300, #16982799
Oklahoma City, OK 73102
Tel: (212) 532-1091
E: tbean@sirillp.com

Albert J. Asciutto*
**SIRI & GLIMSTAD LLP**
220 West Congress St., 2nd Floor
Detroit, MI 48226
Tel: 313-217-2389

CLASS ACTION COMPLAINT - 36

E: aasciutto@sirillp.com

*Attorneys for Plaintiffs and the Putative Class*

*\*Pro hac vice anticipated*