**FAEGRE DRINKER BIDDLE & REATH LLP**
PAUL A. ROSENTHAL (SBN 338994)
paul.rosenthal@faegredrinker.com
600 Campus Drive
Florham Park, New Jersey 07932
Telephone: +1 973 549 7000
Facsimile: +1 973 360 9831

Attorney for Defendant
MOTIVE TECHNOLOGIES, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**ADAM DEAN and CHRISTIAN ERICKSON**, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

**MOTIVE TECHNOLOGIES, INC.**,

Defendant.

Case No. 4:26-CV-07675-AMO

Hon. Araceli Martínez-Olguín

**DEFENDANT MOTIVE TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

[Filed Concurrently with Declaration of Marc Ische in Support, [Proposed] Order]

Date: December 10, 2026
Time: 2:00 p.m.
Courtroom: Oakland Courthouse, 5

Complaint Filed: July 24, 2026

**TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 10, 2026, at 2:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Judge Araceli Martínez-Olguín, in Courtroom 5 of the above-entitled court, located at the Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Oakland, California, 94612, Defendant MOTIVE

TECHNOLOGIES, INC. ("Motive") will and hereby does move to dismiss the Class Action Complaint in its entirety.

Motive moves the Court for an order dismissing all causes of action asserted by Plaintiffs Adam Dean and Christian Erickson under Federal Rule of Civil Procedure ("Rule") 12(b)(1) on the ground that Plaintiffs plead no injury in fact, and under Rule 12(b)(6) on the ground that no Count states a claim. This Motion rests on this Notice, the Memorandum below, the Declaration of Marc Ische, the pleadings on file, and any argument the Court may permit.

**STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(a)(3))**

1. Whether Plaintiffs lack Article III standing because Motive did not release the challenged technology to any customer until May 2026, after Plaintiff Dean (2023) and Plaintiff Erickson (2025) had stopped driving for their employers.

2. Whether the Complaint fails to state a claim because (a) it pleads no facts showing that Motive technology ever read either Plaintiff's license plate; (b) each count fails on its own elements, since there is no protected privacy interest or highly offensive conduct, no "harm" as defined by the California Automatic License Plate Reader Act, and no tracking device as defined under the California Invasion of Privacy Act § 637.7; and (c) Dean's sole claim is time-barred under the statute of limitations.

**RELIEF REQUESTED**

Motive respectfully requests that the Court dismiss all causes of action asserted in the Complaint.

DATED: October 19, 2026

**FAEGRE DRINKER BIDDLE & REATH LLP**

By: *___/s/ Paul A. Rosenthal___*
Paul A. Rosenthal

Attorney for Defendant
MOTIVE TECHNOLOGIES, INC.

## TABLE OF CONTENTS


**INTRODUCTION** .......... 1

**STATEMENT OF FACTS** .......... 2

**ARGUMENT** .......... 3

**I. Plaintiffs Lack Article III Standing and Their Complaint Should be Dismissed Under Rule 12(b)(1)** .......... 3

**II. Plaintiffs' Complaint Should be Dismissed Under Rule 12(b)(6)** .......... 5

A. The Complaint Fails to Allege Sufficient Facts to Demonstrate the LPDS was Used to Capture Plaintiffs' Data .......... 5

B. The Complaint Fails to Allege Facts to Establish the Requisite Elements of Each Count .......... 9

1. Counts I and II Independently Fail Because Plaintiffs Allege No Protected Privacy Interest and No Highly Offensive Intrusion .......... 9

2. Count III Fails Because Plaintiff Erickson Does Not Plausibly Allege Harm Under the California Automatic License Plate Reader Act .......... 14

3. Count IV Fails Because Plaintiff Erickson Does Not Plausibly Allege He was Tracked by an "Electronic Tracking Device" .......... 17

**III. Plaintiff Dean's Single Claim Under Count I is Untimely** .......... 18

**IV. If the Court Reaches the Merits, It Should Dismiss with Prejudice** .......... 19

**CONCLUSION** .......... 19

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 5, 6, 8–9, 13–14

*Bartholomew v. Parking Concepts, Inc.*,
118 Cal. App. 5th 438 (2026) ... 8, 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ... 5, 14

*Browning v. Am. Honda Motor Co.*,
549 F. Supp. 3d 996 (N.D. Cal. 2021) ... 6

*Cahen v. Toyota Motor Corp.*,
147 F. Supp. 3d 955 (N.D. Cal. 2015) ... 11–12

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ... 4–5

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ... 19

*Forsyth v. Cessna Aircraft Co.*,
520 F.2d 608 (9th Cir. 1975) ... 18

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) ... 18

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ... 10

*Hill v. Nat'l Collegiate Athletic Ass'n*,
865 P.2d 633 (Cal. 1994) ... 11

*Housh v. Peth*,
133 N.E.2d 340 (Ohio 1956) ... 13

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ... 10

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ... 12, 17–18

*In re Otter.AI Priv. Litig.*,
No. 25-cv-06911-EKL, 2026 WL 2351237 (N.D. Cal. Aug. 13, 2026) ... 13

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
No. 16-CV-06391-BLF, 2020 WL 7664461 (N.D. Cal. Dec. 24, 2020) ... 6

*Jablon v. Dean Witter & Co.*,
614 F.2d 677 (9th Cir. 1980)........................................................................................ 18

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005)........................................................................................ 6

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)........................................................................................ 4–5

*Mata v. Digital Recognition Network, Inc.*,
121 Cal.App.5th 1075 (Cal. Ct. App. 2026)........................................................ 15–16

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011)........................................................................................ 4

*Mollaei v. Otonomo Inc.*,
651 F. Supp. 3d 1135 (N.D. Cal. 2023)........................................................................ 17

*Mollaei v. Otonomo Inc.*,
No. 23-16079, 2025 WL 1163727 (9th Cir. Apr. 22, 2025)........................................ 17

*Moran v. Lewis*,
114 N.E.3d 1254 (Ohio Ct. App. 2018)........................................................................ 13

*Navarro v. Skidata, Inc.*,
No. 2:20-cv-07370-SVW-SK, 2022 WL 18280359 (C.D. Cal. Dec. 7, 2022)................. 11

*Price v. First Fin. Sec., Inc.*,
No. 2:24-cv-10985-MCS-RAO, 2025 WL 2427997 (C.D. Cal. July 21, 2025)............. 10

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004)........................................................................................ 4

*Shulman v. Grp. W. Prods., Inc.*,
18 Cal. 4th 200 (1998)........................................................................................ 9, 12

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir.)........................................................................................ 6, 8

*State v. Miller*,
260 N.E.3d 761 (Ohio Ct. App. 2025)........................................................................ 13

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998)........................................................................................ 6, 8

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)........................................................................................ 3

*United States v. Knotts*,
460 U.S. 276 (1983)........................................................................................ 12

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003)........................................................................................ 6

**Statutes**

Cal. Civ. Code § 1798.90.5 .......... 14

Cal. Civ. Code § 1798.90.54(a) .......... 15

Cal. Civ. Proc. Code § 335.1 .......... 18

Cal. Penal Code § 637.7 .......... 16–17

Cal. Veh. Code §§ 5200, 5201 .......... 11

**Rules**

Fed. R. Civ. P. 12(b)(1) .......... 3, 19

Fed. R. Civ. P. 12(b)(6) .......... 5, 19

**Other Authorities**

*AI Dash Cams & Fleet Safety Dash Cameras – AI Dashcam Plus,* Motive (archived Jan. 8, 2026) .......... 6

*Introducing AI Dashcam Plus: See More. Act Faster. Prevent More Accidents.,* Motive (Jan. 8, 2026) .......... 7, 14

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs Christian Erickson and Adam Dean are former employees of commercial motor vehicle carriers—truck drivers. They claim that between 2020 and 2025, they drove trucks with dashcams that used Motive's technology to photograph their personal vehicles' license plates, log their movements, and feed a nationwide surveillance database allegedly operated by Motive.

There are many problems with Plaintiffs' theory, but there is one so fundamental that it must be addressed now before the Court or the Parties invest time in this matter: the combination of hardware and software challenged by Plaintiffs—a new Motive dashcam referred to as the "Motive AI Dashcam Plus" or "AIDC+" and a new software suite that reads license plates in limited circumstances (the "Motive License Plate Data System" or "LPDS") that works solely with the new Motive AIDC+—was not together available to any Motive customer until May of 2026.

Plaintiffs' allegations that they were harmed by Motive's then non-existent LPDS technology not only fail to satisfy Article III but also demonstrate why Plaintiffs fail to state a claim: Every count in the Complaint alleges the LPDS read Plaintiffs' plates and/or collected other information. Indeed, the sources Plaintiffs cite in their own Complaint contradict their conclusory allegations. As a result, Plaintiffs fail to allege any facts to support that they were harmed by the LPDS.

Independent of these fundamental shortcomings, the Complaint also fails to allege facts sufficient to plead the elements of each count. Counts I and II fail because Plaintiffs have no privacy interest in their publicly displayed license plates or in their movements on public roads, so Motive's alleged capture of that information cannot be a highly offensive intrusion. Erickson's Count III fails because the California Automatic License Plate Reader Act compensates an individual "harmed by a violation" but Erickson alleges only a subjective belief that his privacy was violated. Count IV fails because no tracking device was attached to Erickson's vehicle. And Dean's sole claim under

Count I is untimely on the face of the Complaint.

None of these defects can be cured by amendment. The Court should dismiss the Complaint.

## STATEMENT OF FACTS

Motive provides fleet-management, driver-safety, and logistics technology. (Compl. ¶¶ 1–3, 28, 33.) Its core product is a dashboard camera for commercial vehicles (the "Motive Dashcam"), with one camera facing the driver and one facing the road. (Compl. ¶¶ 1–3.) The Motive Dashcam supports a variety of safety functions, including distraction and cellphone-use alerts, GPS tracking for fleet vehicles, and video recording of the roadway. (Compl. ¶¶ 1–3, 33, 48–52.)

On January 8, 2026, Motive announced the release of the AIDC+ and made it available to all customers. Decl. of Marc Ische in Supp. of Def.'s Mot. to Dismiss ("Ische Decl.") ¶ 5. The AIDC+ (i) enables and supports the LPDS and (ii) is the only Motive Dashcam that supports the LPDS. (*Id.* ¶ 7.) All prior iterations of Motive's Dashcams are incapable of enabling or supporting the LPDS. (*Id.*)

On April 14, 2026, Motive released to its employees an initial limited version of the LPDS for internal testing. (Ische Decl. ¶ 9.) The LPDS was not available or in use anywhere before that date. (*Id.*) About a month later, on May 5, 2026, Motive released the LPDS to its customers. (*Id.* ¶ 10.) No Motive customer had access to the LPDS before that date, and only Motive customers who had purchased and were using an AIDC+ could use the LPDS. (*Id.* ¶¶ 10–11.)

Plaintiffs allege that Motive Dashcams were installed in their former employers' company vehicles during Plaintiffs' employment. (Compl. ¶¶ 12, 20–21.) Erickson alleges that he worked as a FedEx Ground contractor for Ground Logistics Services (henceforth, "FedEx Ground") from approximately 2022 to 2025. (Compl. ¶ 12.) Dean alleges that he drove trucks for Accurate



FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW

Transportation from approximately 2020 to 2023. (Compl. ¶¶ 20–21.)[1] Motive did not provide FedEx Ground or Accurate Transportation with any AIDC+ system between 2022–2025. (Ische Decl. ¶ 6.)

During these employment periods (the "Relevant Employment Periods"), Plaintiffs allege that "Motive's AI Dashcam" and a "centralized cloud-based platform," operated an "automatic license plate recognition system" to "automatically detect and record an individual's 'Vehicle Tracking Data,' and then aggregate and use that information to track an individual's movements." (Compl. ¶¶ 4, 114–117, 127–129, 134, 140–144, 150–151.) Plaintiffs define "Vehicle Tracking Data" to include:

> license plate numbers, vehicle characteristics (including any and all data used by Motive to identify a given vehicle), time-stamped records, and geographic location data reflecting a vehicle's location and movements through areas, along with any other information monitored, captured, collected, and/or aggregated by Motive's ALPRs and ALPR systems (Compl. ¶ 4.)

Throughout the Complaint, Plaintiffs describe Motive Dashcams, including the AIDC+, as well as the LPDS as if they were one product and use a shorthand to refer to them collectively as Motive's "Automatic License Plate Readers" or "Motive's ALPR."

## ARGUMENT

### I. Plaintiffs Lack Article III Standing and Their Complaint Should Be Dismissed Under Rule 12(b)(1)

Plaintiffs' Complaint fails to allege a sufficient injury to confer Article III standing because the LPDS did not exist at the time of Plaintiffs' alleged injuries and therefore could not have caused their alleged injuries. (Ische Decl. ¶¶ 9–10.)

Courts must resolve the question of jurisdiction before reaching a decision on the merits.

---

[1] For the purposes of this Motion, Motive assumes ¶ 21 of the Complaint intended to describe Plaintiff Dean, though it refers to Plaintiff Erickson.

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). "The party invoking federal jurisdiction bears the burden of establishing [the elements of standing]." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also Maya v. Centex Corp*., 658 F.3d 1060, 1068–70 (9th Cir. 2011). Article III standing is "an indispensable part of the plaintiff's case," and requires plaintiffs to demonstrate an injury that is concrete, actual or imminent, and particularized. *Lujan*, 504 U.S. at 561. Plaintiffs may not "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). In evaluating jurisdiction, courts need not presume the truthfulness of the plaintiff's allegations within the complaint and may consider evidence beyond the pleadings—including declarations—without converting the motion into one for summary judgment. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Each of the Plaintiffs' claims assumes and relies on the assumption that the LPDS was operating on the Dashcams in the Plaintiffs' employers' trucks:

- **Count I**: Plaintiffs' common law invasion of privacy claims cite to Motive's alleged "acquisition, disclosure, and aggregation" of Plaintiffs' and Class Members' "Vehicle Tracking Data," defined as including information captured by the LPDS, during Plaintiffs' employment with FedEx Ground and Accurate Transportation. (Compl. ¶¶ 4, 114–117.)

- **Count II**: Plaintiff Erickson's California Constitutional Invasion of Privacy claim is grounded in Motive's alleged "use and installation of ALPRs" during his employment with FedEx Ground via the LPDS and Motive's alleged "recording, collecting, storing, aggregating, and disseminating Plaintiff Erickson's and California ALPR Subclass Members' Vehicle Tracking Data." (*Id.* ¶¶ 127–129, 134.)

- **Count III**: Plaintiff Erickson's alleged violations of California's Automatic License Plate Reader Act hinge on Motive's status as an "ALPR operator" or "ALPR end-user" due to the LPDS during his employment with FedEx Ground. (*Id.* ¶¶ 140–144.)

- **Count IV:** Plaintiff Erickson's California Invasion of Privacy Act ("CIPA") allegations focus on Motive's alleged tracking "through the AI Dashcam's ALPR" during his employment with FedEx Ground. (*Id.* ¶¶ 150–151.)

But technology that did not exist on their Motive Dashcams could not have collected Plaintiffs'

license plate data, tracked their movements, or caused any alleged injury. Plaintiffs therefore lack Article III standing and their allegations of anxiety/fear that unidentified third parties might use, misuse, or gain access to Motive's records (Compl. ¶¶ 17, 119, 136) are just unrelated speculative and hypothetical concerns that are not actual or imminent. *Lujan*, 504 U.S. at 560–61; *Clapper*, 568 U.S. at 416.

## II. Plaintiffs' Complaint Should be Dismissed Under Rule 12(b)(6)

Not only do Plaintiffs lack standing, but they also fail to allege facts sufficient to state any claim. A district court should dismiss a complaint that fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Labels and conclusions" and "a formulaic recitation of the elements" will not suffice. *Twombly*, 550 U.S. at 555.

As set forth below, Plaintiffs' Complaint both (i) fails to allege sufficient facts to support the underlying premise that the LPDS was used to capture Plaintiffs' data; and (ii) fails to sufficiently allege facts to establish the requisite elements of each of the Complaint's four counts.

### A. The Complaint Fails to Allege Sufficient Facts to Demonstrate the LPDS Was Used to Capture Plaintiffs' Data

Plaintiffs' Complaint fails to allege sufficient facts to support the fundamental contention that the LPDS read Plaintiffs' license plates or collected "Vehicle Tracking Data." The sources cited in the Complaint, when considered in full (as they must be), confirm that the LPDS did not exist when Plaintiffs allege they were injured. And the Complaint pleads no other facts showing that the LPDS captured Plaintiffs' data during or after their employment. Put simply, Plaintiffs have

failed to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A court deciding a motion to dismiss may consider documents outside the pleadings if the complaint refers to the document, the document is central to the plaintiff's claim, and no party questions its authenticity. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). This rule exists to "prevent[] plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Browning v. Am. Honda Motor Co.*, 549 F. Supp. 3d 996, 1004–05 (N.D. Cal. 2021) (quoting *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, No. 16-CV-06391-BLF, 2020 WL 7664461, at *4 (N.D. Cal. Dec. 24, 2020)). The rule "applies with equal force to internet pages as it does to printed material," and when a court incorporates a document, the court may consider all of it, not merely the portions the plaintiff chose to quote. *Knievel v. ESPN,* 393 F.3d 1068, 1076–77 (9th Cir. 2005). And the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998); *accord Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

<u>First</u>, Plaintiffs cite to materials that refute their own allegations. For example, Plaintiffs cite a product page for the "AI Dashcam Plus," (Compl. ¶¶ 1–2 & nn.2–3) ("AI Dashcam Plus Product Page") and a Motive publication titled "*Introducing AI Dashcam Plus*." (*Id.* ¶¶ 40–41 & nn.15–16) ("AI Dashcam Plus Intro Article.") The AI Dashcam Plus Product Page, first published January 8, 2026, describes Motive's "NEW Fleet AI Dash Cam," and new capabilities. *AI Dash Cams & Fleet Safety Dash Cameras – AI Dashcam Plus*, Motive (archived Jan. 8, 2026).[2] One

[2] https://gomotive.com/products/dashcam/ [https://web.archive.org/web/20260108202418/https://gomotive.com/products/dashcam/

new capability is the "Capture [of] Critical Evidence" via the AI Dashcam Plus's "1440p zoom lens" which supports vehicle data capture by "clearly identifying vehicles in hit-and-runs, road rage, and theft incidents." (*Id.*) The AI Dashcam Plus Product Page states this capability is "***Coming mid-2026.***" (*Id.* (emphasis added).) Plaintiffs quote the AI Dashcam Plus Intro Article's description of the AI Dashcam Plus's "'high-resolution 1440p zoom lens'" that captures "'license plates up to 40 feet away, or in rain or snow.'" (Compl. ¶¶ 40–41 & nn.15–16); *Introducing AI Dashcam Plus: See More. Act Faster. Prevent More Accidents*, Motive (Jan. 8, 2026).[3] The Article, also published January 8, 2026, calls the AIDC+ "the next leap in driver safety," and states further license plate capture features were "[e]xpected in mid-2026." (*Id.*)

The Complaint cites both publications to allege that "Motive's AI Dashcam continuously monitors and records" road conditions (Compl. ¶ 2) and that "Motive's ALPRs automatically detect, identify, and create a record of every vehicle that enters their field of view." (*Id.* ¶ 41.) But the Complaint leaves out the parts of both publications—that the AIDC+ is new hardware and that the license plate technology it supports was "Expected" or "Coming" in "mid-2026"—that refute their allegations that the technology operated on the Motive Dashcams in their vehicles.

Second, Plaintiffs cite sources that are not about the AIDC+ or the LPDS. Rather, they describe prior Motive Dashcams and features that have nothing to do with license plate data capture, even as Plaintiffs conclusorily attribute the features to the alleged "Motive ALPRs." (*See, e.g.*, Compl. ¶¶ 32–33 & nn.7–8 (citing Motive's Platform Overview and AI Dashcam webpage for "continuous video of both the vehicle driver and the road, as well as providing persistent GPS tracking"); *id.* ¶¶ 48–50 & nn.17–18 (citing Motive's AI Dashcam webpage for its ability "to

[3] https://gomotive.com/blog/introducing-ai-dashcam-plus/ [https://web.archive.org/web/20260108231558/https://gomotive.com/blog/introducing-ai-dashcam-plus/]

instantly alert a driver to unsafe behaviors and coach them on the behavior in real-time"); *id.* ¶¶ 51–52 & nn.19–20 (citing Motive's SEC Form S-1 for its "Driver Fatigue Index," which "combines micro-behaviors, like yawning, eye rubbing, stretching, and head droop, with patterns in driving dynamics such as late braking, swerving, inconsistent speed, and abnormal acceleration").)

The above sources demonstrate that Motive introduced the LPDS in mid-2026, long after both Plaintiffs stopped driving for employers that were allegedly using Motive Dashcams: Erickson alleges he stopped working for his employer in approximately 2025 and Dean alleges he stopped working for his employer in approximately 2023. (Compl. ¶¶ 12, 21.) And neither Plaintiff alleges that he had any contact with the LPDS after his employment ended. Taken together, the facts Plaintiffs allege regarding their dates of employment and the facts Plaintiffs cannot plead around regarding the LPDS contradict the Complaint's allegations that the AIDC+ and LPDS together "captured, collected, and/or aggregated" Plaintiffs' "Vehicle Tracking Data" (Compl. ¶ 4) and other data types (Compl. ¶¶ 14, 23, 32–33, 48–50, 51–53). The Court should reject Plaintiffs' baseless allegations. *Steckman*, 143 F.3d at 1295–96; *Sprewell*, 266 F.3d at 988.

Third, Plaintiffs fail to allege any facts to support how, when, or where the LPDS read Plaintiffs' license plates or collected Plaintiffs' "Vehicle Tracking Data." This failure prohibits "the court [from] draw[ing] the reasonable inference that [Motive] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Even Plaintiffs' own cited authority, *Bartholomew v. Parking Concepts, Inc.*, highlights the problem. 118 Cal. App. 5th 438 (2026), *modified on denial of reh'g*, 118 Cal. 27, 2026 App. 5th 813 (2026), *review denied* (May 13, 2026). In *Bartholomew*, the plaintiff alleged he drove into a parking facility that the defendant operated, took a ticket from a machine upon entry that had his license plate number printed on the ticket along with the date and time of entry, and saw his license plate number displayed on a screen as he exited. *Id.* at 446. Those facts allowed the

court to conclude that the plaintiff sufficiently alleged defendant operated a system that collected the plaintiff's license plate data.

Here, Plaintiffs allege nothing comparable. They do not identify a place or time at which the LPDS read their license plates or collected their "Vehicle Tracking Data," which Motive dashcam model collected their data, or when their employers installed a Motive Dashcam in their work vehicles. The Complaint alleges only that at some unspecified time during the period of their employment, "a Motive ALPR was installed in [Plaintiffs'] company vehicle" and that Plaintiffs' personal vehicles were "recorded and analyzed" when they arrived at work. (Compl. ¶¶ 12, 14, 21, 23.) These are conclusory statements and supply no factual content to support Plaintiffs' allegations of Motive's liability. *Iqbal*, 556 U.S. at 678.

### B. The Complaint Fails to Allege Facts to Establish the Requisite Elements of Each Count

Plaintiffs' Complaint fails for the additional, independent reasons that the claims for common-law intrusion upon seclusion, invasion of privacy under the California Constitution, violations of the California Automatic License Plate Reader Act, and violations of the California Invasion of Privacy Act lack factual support to establish their requisite elements**.** Consequently, the Complaint should be dismissed.

#### 1. Counts I and II Independently Fail Because Plaintiffs Allege No Protected Privacy Interest and No Highly Offensive Intrusion

Counts I and II assert two privacy claims that fail for the same basic reason: a publicly observable license plate or a person's travel on public roads is not private or legally protected.[4]

[4] Count I (common-law intrusion upon seclusion) applies to both Plaintiffs on behalf of a nationwide class. (Compl. ¶¶ 113–122.) Count II (California constitutional privacy) applies only to Plaintiff Erickson on behalf of a California subclass. (Compl. ¶¶ 123–138.)

Plaintiffs' common law intrusion upon seclusion claim (Count I) requires an intentional intrusion into a private place, conversation or matter that a reasonable person would find highly offensive. *Shulman v. Grp. W. Prods., Inc.*, 18 Cal. 4th 200, 231 (1998) (adopting the Restatement (Second) of Torts § 652B cmt. c (Am. L. Inst. 1977) formulation of the intrusion tort and noting that "there is no liability . . . for observing [a person] or even taking his photograph while he is walking on the public highway"). Plaintiff Erickson's California constitutional privacy claim (Count II) similarly requires a legally protected privacy interest, a reasonable expectation of privacy, and an intrusion "so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of the social norms." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) (internal quotation marks omitted). Because the common-law and constitutional standards substantially overlap, courts often analyze the claims together. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020); *Price v. First Fin. Sec., Inc.*, No. 2:24-cv-10985-MCS-RAO, 2025 WL 2427997, at *3 (C.D. Cal. July 21, 2025).

Counts I and II both rest on Motive's alleged capture and aggregation of Plaintiffs' "Vehicle Tracking Data." Count I alleges that Motive's "repeated acquisition, disclosure, and aggregation" of Plaintiffs' Vehicle Tracking Data is highly offensive. (Compl. ¶¶ 115–117.) Count II alleges that Motive recorded, collected, stored, aggregated, and disseminated Erickson's Vehicle Tracking Data to create "comprehensive movement profiles." (*Id.* ¶¶ 127–129.) Both Plaintiffs allege that a "Motive ALPR" captured their personal vehicles and license plates when they arrived at work. (*Id.* ¶¶ 14, 23.) But none of these theories (all ultimately grounded in the alleged collection of license plate information) satisfies the requisite standards for intrusion upon seclusion or a California constitutional privacy claim. Specifically: (a) Plaintiffs allege no protected privacy interest or reasonable expectation of privacy in their Vehicle Tracking Data, so Motive's alleged capture of

that data cannot be highly offensive; and (b) the Complaint does not plausibly allege that any of the challenged conduct reached either named Plaintiff.[5] The Court should dismiss Counts I and II for these reasons.

**a. Plaintiffs allege no protected privacy interest or highly offensive intrusion**

The Complaint fails to identify an intrusion by Motive upon any protected privacy interest. California recognizes two kinds of privacy interests: interests "in precluding the dissemination or misuse of sensitive and confidential information," (informational interest) and interests "in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference." (autonomy interest). *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 972–73 (N.D. Cal. 2015) *aff'd*, 717 F. App'x 720 (9th Cir. 2017) (quoting *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633, 654 (Cal. 1994)). Plaintiffs purport to have both interests, alleging a protected privacy interest in their "Vehicle Tracking Data" and an interest in "making personal travel decisions" about their "personal movements," particularly "when that information is aggregated and [allegedly] used to track" them. (Compl. ¶ 114; *see also id*. ¶¶ 116, 130, 132–33.) But Plaintiffs' allegations do not support either type of protected privacy interest.

First, Plaintiffs allege no informational privacy interest, because the data they base their claims on is not confidential. California law requires every vehicle to display its plates in plain view and keep them visible and legible. Cal. Veh. Code §§ 5200, 5201. This district has rejected asserted privacy interests in vehicle and movement information far more revealing than a plate number. In *Cahen*, drivers alleged that car manufacturers collected data from their cars showing

[5] Motive reserves its position that the common law of each putative class member's home state governs that member's privacy claim and that the resulting variations preclude certification of a nationwide class.

the cars' driving history, performance, and "geographic location . . . at various times." 147 F. Supp. 3d at 972–73. The court dismissed the drivers' California constitutional privacy claim because tracking a vehicle's location "at various times" is not the kind of "sensitive and confidential information the constitution aims to protect." *Id.* at 973; *see also Navarro v. Skidata, Inc.*, No. 2:20-cv-07370-SVW-SK, 2022 WL 18280359, at *11 (C.D. Cal. Dec. 7, 2022) (granting summary judgment for a California Constitutional Privacy claim alleging shopping malls collected plaintiffs' vehicle and license plate data because "an individual has no privacy interest in publicly-displayed information such as a license plate").

Second, Plaintiffs allege no autonomy privacy interest, because driving on public roads is not an intimate personal decision. California courts have refused to extend "bodily autonomy" privacy to data autonomy. *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 197–98 (N.D. Cal. 2019) (rejecting Google users' claims that cataloging their movements restricted their ability to make "intimate personal decisions."). The United States Supreme Court has likewise held that a person "traveling . . . on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *United States v. Knotts*, 460 U.S. 276, 281 (1983) (holding that police did not need a warrant to follow a radio beeper hidden in a defendant's car while it was on public roads).

Plaintiffs base their claims only on publicly observable data, not private or protected interests. Erickson and Dean each allege that a "Motive ALPR" captured their personal vehicles as they "arrived to work," in their employers' parking areas, with their cars and plates in plain view. (Compl. ¶¶ 14, 23.) Recording what any passerby could see is not an intrusion into a private place, conversation, or matter. *See Shulman*, 18 Cal. 4th at 231. Nor would observing and recording data about Plaintiffs' cars in a parking lot, or about Plaintiffs while they drove a company truck have

anything to do with Plaintiffs' "intimate decisions" about driving to work or driving their work vehicles. *In re Google Location*, 428 F. Supp. 3d at 197–98. The *Cahen* court rejected similar allegations that "simply by driving, [the plaintiff] is constantly creating data about her personal travel locations, which [the defendant] collects, aggregates, and disseminates." 147 F. Supp. 3d at 973. Moreover, neither Plaintiff alleges that any other Motive camera recorded his car, that Motive interfered with any specific personal decision about their movements, or that anyone built or viewed a profile of his movements.

Even if Dean's Count I claim is governed by Ohio law rather than California law, Ohio law dictates the same result. Intrusion upon seclusion is defined as an intrusion into the plaintiff's solitude or private affairs that a reasonable person would find highly offensive. *Housh v. Peth*, 133 N.E.2d 340, 343 (Ohio 1956). Ohio law does not recognize an expectation of privacy in a license plate number that the state requires a driver to display on his vehicle. *State v. Miller*, 260 N.E.3d 761, 764 (Ohio Ct. App. 2025). And observing or recording a person in a public place does not state an intrusion claim. *Moran v. Lewis*, 114 N.E.3d 1254, 1259 (Ohio Ct. App. 2018).

Plaintiffs fail to allege any protected privacy interest under California or Ohio law because a license plate, vehicle information, a person's movements, or other publicly observable information is not private. And because Plaintiffs had no reasonable expectation of privacy in their Vehicle Tracking Data, Motive's alleged capture of that data was not a highly offensive intrusion into anything private, and the Court need not separately weigh offensiveness. *Cf. In re Otter.AI Priv. Litig.*, No. 25-cv-06911-EKL, 2026 WL 2351237, at *9 n.3 (N.D. Cal. Aug. 13, 2026) (declining to decide whether an intrusion was highly offensive after holding that two plaintiffs failed to allege a reasonable expectation of privacy).

**b. The challenged conduct did not reach either Plaintiff**

Even if the Complaint identified a private matter and a serious intrusion, it does not plausibly allege that any of the challenged conduct happened to Plaintiffs. That a product has a capability is not an allegation that the capability was used on the plaintiff. *Iqbal*, 556 U.S. at 678–79.

The Complaint alleges that Motive aggregates plate data across its network to build movement profiles. (Compl. ¶¶ 42–43, 129.) But it does not allege that Motive created a movement profile of either named Plaintiff, that Motive linked any data point from either Plaintiff's plate to any other data point, or that either Plaintiff's data entered any database or reached any downstream user. Similarly, the Complaint identifies "TruckIt," one of the 250 third-party services Motive's platform integrates with, and alleges that TruckIt shares data with marketing providers. (Compl. ¶¶ 56–61.) However, Plaintiffs do not allege they used TruckIt, that their employers used TruckIt, or that TruckIt shared their data. Without additional specific facts, Plaintiffs' theories about the collection, use, and sharing of their Vehicle Tracking Data describe what they allege the technology could do, not what it did to them. *Iqbal*, 556 U.S. at 678. Conclusory allegations of that kind should not survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

**2. Count III Fails Because Plaintiff Erickson Does Not Plausibly Allege Harm Under the California Automatic License Plate Reader Act**

Count III alleges that Motive failed to implement or post an Automatic License Plate Reader ("ALPR") usage and privacy policy compliant with California law, and that this failure "deprived [Plaintiffs] of their statutory right to know." (Compl. ¶¶ 89, 143–144.) But any alleged policy defect is irrelevant because the Complaint fails to plausibly allege Motive operated or used a "Motive ALPR" and caused harm to Plaintiffs. *See* Section II.A.

The California ALPR Act imposes duties on an "ALPR operator" defined as a person that



FAEGRE DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW

operates an ALPR system, and an "ALPR end-user"—a person that accesses or uses one. Cal. Civ. Code § 1798.90.5. Plaintiff Erickson pleads no facts showing that any alleged "Motive ALPR" ever processed his information either while employed with FedEx Ground or anytime thereafter. The Motive materials the Complaint relies on describe the LPDS that facilitates license plate recognition in conjunction with the AIDC+ that Motive "[e]xpected in mid-2026." *Introducing AI Dashcam Plus, supra*. Erickson alleges that he worked with FedEx Ground from about 2022 to 2025. (Compl. ¶ 12.) Motive did not owe Erickson, or any other person, any duty to publish a policy governing a capability it did not offer during Erickson's employment with FedEx Ground.

Count III fails for an additional reason as well. The Act does not make actionable every failure to comply with the policy requirements of the Act. It gives a private right to sue only to "an individual who has been harmed by a violation," and only against a person who "knowingly caused the harm." Cal. Civ. Code § 1798.90.54(a).

Both California appellate courts that have construed the California ALPR Act agree that the violation of the Act alone is not a harm sufficient for a claim. The court in *Bartholomew* rejected the argument that harm follows from *any* violation of the Act because "[t]he statutory language limiting civil actions to persons 'harmed by a violation' against defendants who 'caused the harm' indicates that more than just the fact of a violation is required." 118 Cal. App. 5th at 447. The Fourth District agreed in *Mata v. Digital Recognition Network, Inc.*, holding that standing under the Act "requires actual harm." 121 Cal. App. 5th 1075, 1082 (Cal. Ct. App. 2026). The *Mata* court was also skeptical of *Bartholomew's* "right to know harm," but it did not need to resolve that question because, unlike the defendant in *Bartholomew*, the defendant in *Mata* had posted a policy. *Id*. at 1099.

In *Mata*, the defendant's cameras had captured each of Guillermo Mata's two license plates

at least 15 times, and the resulting records appeared in the defendant's ALPR system. *Id*. at 1088. But Mata later conceded in his deposition that his information had never been the subject of a breach or of unauthorized access or use; that his identity had not been stolen; that he had never been stalked; and that he had suffered no physical injury, lost wages, or monetary damage. *Id*. Mata also conceded that only his attorneys had accessed his data, and that he had never visited the defendant's website to review defendant's policy. *Id*. The Court of Appeal affirmed summary judgment, holding that a plaintiff who identifies no resulting harm beyond his own subjective belief that his privacy was invaded by the collection and storage of his data lacks standing under the Act. *Id*. at 1082, 1098.

Plaintiff Erickson's allegations fall short of the same standard. Plaintiff Erickson alleges only that he "worries about his privacy and personal security" and worries about how others "might use or misuse" Motive's records. (Compl. ¶¶ 9, 17–18.) As the court held in *Mata*, that kind of subjective belief, without more, is insufficient. *Mata*, 121 Cal.App.5th at 1098. Erickson fails to allege that he looked for a Motive policy or that he would have read the policy had he located it. Moreover, Erickson fails to allege whether he would have acted differently had Motive posted a policy. Nor does Erickson allege that Motive "knowingly caused" him harm; the Complaint says only that the Act had been "in effect for over ten years" and that Motive "either knew or should have known" of its requirements. (Compl. ¶ 145.) An allegation that Motive should have known about a statute does not allege that Motive knew it was causing harm to Erickson.

The plaintiff in *Mata* had evidence that the defendant collected his plate data at least fifteen times, and the court still found no harm. Erickson pleads no facts showing that an alleged "Motive ALPR" system collected his data even once, and he alleges no harm beyond his own worry. Count III should be dismissed.

**3. Count IV Fails Because Plaintiff Erickson Does Not Plausibly Allege He was Tracked by an "Electronic Tracking Device"**

Count IV alleges that "the Motive Platform which collates vehicle-specific geolocation data through the AI Dashcam's ALPR tracking" is an "electronic tracking device" under CIPA, Cal. Penal Code § 637.7 (Compl. ¶ 150) that allegedly tracked Plaintiff Erickson and the California ALPR subclass members without their knowledge or consent. (Compl. ¶ 151.) However, CIPA § 637.7 does not apply to the conduct alleged.

CIPA forbids the use of "an electronic tracking device to determine the location or movement of a person," and it defines that term as "any *device attached to* a vehicle or other movable thing that reveals its location or movement by the transmission of electronic signals." Cal. Penal Code § 637.7(a), (d) (emphasis added). The Ninth Circuit has confirmed that the Legislature passed CIPA's § 637.7 "to address private investigators affixing tracking devices to other people's vehicles to track them without their knowledge." *Mollaei v. Otonomo Inc.*, No. 23-16079, 2025 WL 1163727, at *3 (9th Cir. Apr. 22, 2025); *see also Mollaei v. Otonomo Inc.*, 651 F. Supp. 3d 1135, 1141 (N.D. Cal. 2023) (holding that CIPA section 637.7 requires identification of a "separate device that is attached, or placed, onto an automobile by the alleged wrongdoer.") The Legislature was concerned with continuous covert surveillance of a person's movements through that attached tracking device, not "the collection of location data generally." *Mollaei*, 2025 WL 1163727, at *3.

Here, the LPDS and Motive Dashcam, together described by Plaintiffs as a "Motive ALPR," cannot be an "electronic tracking device" as the statute defines. Erickson does not allege that anyone attached a device to his personal car, but instead alleges that a Motive Dashcam mounted in a company vehicle captured his personal car entering his work parking area and transmitted the data to a Motive "platform." (Compl. ¶¶ 14–15, 150.) He describes the dashcams as "mounted

inside" other vehicles, which "create a record of every vehicle that enters their field of view." (Compl. ¶¶ 41, 44.) Even if a Motive Dashcam in another vehicle photographed Erickson's personal car as it passed, Erickson does not allege the dashcam was "attached to" his car and the Dashcam could not have tracked where his car went after it left the camera's view. Cal. Penal Code § 637.7(d).

To the extent Plaintiff Erickson alleges the "Motive Platform" software system is the "tracking device" under CIPA (see Compl. ¶ 150), that allegation also fails. Software is not a "device" under CIPA section 637.7. In *In re Google Location*, users alleged that Google Maps and other Google apps tracked their locations without consent. 428 F. Supp. 3d at 187–88. The court dismissed the § 637.7 claim with prejudice and held that apps "are not 'devices' within the meaning of CIPA because they are not 'equipment.'" *Id.* at 193, 195–96. The Motive Platform, even if it collects or shows location information like Google Maps, is a cloud software system, not a "device," and is not attached to the vehicle within the scope of CIPA.

## III. Plaintiff Dean's Single Claim Under Count I is Untimely

In addition to the deficiencies detailed above, the Complaint's allegations regarding Dean are time-barred. A court may dismiss a claim as untimely when "the running of the statute is apparent on the face of the complaint." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). Dean claims exposure to an alleged "Motive ALPR" from 2020 to 2023 while he worked as a truck driver for Accurate Transportation. (Compl. ¶¶ 21, 23.) A federal court sitting in diversity generally applies the forum State's statute of limitations. *Forsyth v. Cessna Aircraft Co.*, 520 F.2d 608, 613 (9th Cir. 1975). Under California Code of Civil Procedure § 335.1, Dean had only two years from, at the latest, December 31, 2023, to initiate a suit, meaning his claim expired no later than December 31, 2025. Plaintiffs did not file this action until July 24, 2026.

The Complaint's tolling allegations do not resurrect Dean's belated claim. A plaintiff whose claim is facially untimely must plead when and how he discovered the facts and why he could not have discovered them earlier with reasonable diligence. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005). Plaintiffs here allege only that the Motive Dashcams were "inconspicuous" (a conclusory allegation regarding a device mounted on a vehicle dashboard) and that the earliest Plaintiffs could have discovered Motive's conduct "would have been" shortly before suit. (Compl. ¶¶ 96, 100.) The Complaint never identifies when either Plaintiff learned of Motive's alleged violations or specifies what either Plaintiff did to find out. In fact, Plaintiffs draw their entire account of Motive's technology from public websites and SEC filings. (Compl. ¶¶ 1–4, 32–34, 40, 51–53 & nn.1–22.) Plaintiff Dean's allegations are time-barred.

**IV. If the Court Reaches the Merits, It Should Dismiss with Prejudice**

Amendment cannot repair these defects. A court should deny leave to amend where amendment would be futile. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Plaintiffs pleaded the dates of their relevant employment and chose the sources describing the technology. No amendment can alter Erickson's Relevant Employment Period, Dean's Relevant Employment Period, or the introduction of the LPDS in 2026. And no amendment can change that a license plate is public, that a safety camera in an employer's truck is not highly offensive, that the California ALPR Act requires harm that Erickson does not allege, or that CIPA liability requires a device that is attached to the tracked vehicle.

## <u>CONCLUSION</u>

For the foregoing reasons, Motive respectfully requests that the Court dismiss the Complaint in its entirety under Rule 12(b)(1) for lack of Article III standing or, in the alternative,

dismiss Counts I through IV under Rule 12(b)(6) with prejudice.

Dated: October 19, 2026

**FAEGRE DRINKER BIDDLE & REATH LLP**

By: */s/ Paul A. Rosenthal*
Paul A. Rosenthal (SBN 338994)

Attorney for Defendant MOTIVE TECHNOLOGIES, INC.

**CERTIFICATION REGARDING USE OF AI PURSUANT TO STANDING ORDER ¶ H4**

Generative AI was used for proofreading and ideation, but not for the generation of content in the Notice of the Motion to Dismiss, Motion, and Memorandum of Arguments and Authorities or its concurrent filings including the supporting declaration of Mr. Marc Ische and Proposed Order. Counsel certifies that all content and citations in this filing have been independently verified against official Westlaw and Lexis Reporters and accurately represent existing, citable legal authority. All quoted material has been verified against the cited source.

Dated: October 19, 2026

**FAEGRE DRINKER BIDDLE & REATH LLP**

By: */s/ Paul A. Rosenthal*
Paul A. Rosenthal (SBN 338994)

Attorney for Defendant MOTIVE TECHNOLOGIES, INC.